# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 C 4341 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| AMERISURE MUTUAL INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

| | |
|---|---|
| AMERISURE MUTUAL INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 C 7080 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| ALLSTATE INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

In this reinsurance dispute, Allstate Insurance Company ("Allstate") and Amerisure Mutual Insurance Company ("Amerisure") have filed competing motions to confirm an arbitration award. Allstate seeks confirmation of certain determinations made in an interim award issued on May 6, 2019, and opposes confirmation of the October 26, 2019 final award made in the same matter by the same panel of arbitrators. Amerisure seeks confirmation of the October 26, 2019 final award and opposes confirmation of the May 6, 2019 interim award. For the following reasons, Amerisure's motion is granted, and Allstate's motion is denied.

## BACKGROUND

Amerisure issued certain primary and umbrella insurance policies to F.B. Wright Company ("F.B. Wright") between November 1976 and November 1979 and to Armstrong Machine Works/Armstrong Video Productions ("Armstrong") between January 1979 and January 1981 and January 1982 to January 1983. These policyholders were engaged in the manufacture, supply, or distribution of asbestos-containing industrial materials.

Thousands of claimants have filed lawsuits against F.B. Wright and Armstrong (collectively, "the policyholders"), beginning in 1985 and 1992, respectively, for injuries caused by exposure to their asbestos-containing products. Amerisure defended F.B. Wright and Armstrong in these suits and indemnified them for their losses under the primary policies. When the primary policies were exhausted, Amerisure continued to defend and indemnify F.B. Wright and Armstrong under the umbrella policies.

Amerisure had reinsured the umbrella polices by entering into six reinsurance contracts, known as "facultative certificates" or "fac certs," issued by Allstate. When Amerisure's defense costs (or "loss adjustment expenses" ("LAE")) and losses approached and exceeded the level at which Allstate's reinsurance contracts began to provide coverage, Amerisure notified Allstate and began to submit reinsurance billings.

Upon examining the reinsured policies and the claims, Allstate could not determine why Amerisure seemed to be paying defense costs in addition to the umbrella policy limits, rather than considering payment of defense costs to erode the policy limits. Allstate inquired about the matter and attempted to exercise its contractual right to associate with Amerisure in the defense of its policyholders. But in December 2017, believing Amerisure's response to its inquiries and requests to be incomplete and evasive, Allstate served Amerisure with a demand for arbitration, pursuant

to the terms of the facultative certificates, all six of which provided that any "irreconcilable difference of opinion . . . as to the interpretation" of the contracts "shall be submitted to arbitration." (*See* Amerisure Pet. to Confirm ¶ 10, Case No. 19 C 7080, ECF No. 1.)

The parties selected a panel of arbitrators, deposed witnesses, and submitted briefs. Allstate explained in its pre-hearing brief that its central grievance was that Amerisure had never satisfactorily explained why it was paying defense costs *in addition* to the policy limits, when the reinsured umbrella policies seemed to provide for payment of defense costs only *within* policy limits. (*See* Mar. 28, 2019 Allstate Pre-Hearing Brief at 59, Knoerzer Decl. Ex. 8, ECF No. 27-9.) According to Allstate, if Amerisure was gratuitously paying defense costs above policy limits, in excess of its contractual obligations under the reinsured umbrella policies, then Allstate was not bound to repay Amerisure for those gratuitous expenditures under its facultative certificates. Allstate further stated that it sought an "Interim Award" in which the panel would, among other things, (a) require Amerisure to provide Allstate with additional information about why it was paying defense costs in addition to policy limits and exactly what expenses the claimed defense costs defrayed, while retaining jurisdiction to resolve any disputes that might arise based on that information; and (b) declare that Allstate has no obligation to repay Amerisure for defense costs that Amerisure paid or will pay under the pre-1982 policies in excess of the limits of those policies. (*See id.* at 59-60.)

The panel held a hearing in April 2019, and, on May 6, 2019, it issued a ruling captioned as an "Interim Final Award." In the ruling, the panel recognized that, under the 1982 Armstrong umbrella policy, Amerisure was required to pay defense costs in addition to limits, so it was proper for Amerisure to bill Allstate for defense costs incurred under that policy, irrespective of the policy limits. (Interim Final Award at 3, Allstate Compl. Ex. 8, Case No. 19 C 4341, ECF No. 1-8.)

However, the language of the pre-1982 umbrella policies was different. Those policies paid defense costs only within the policy limits, unless the policyholders' claims were "not covered" by the primary policies, in which case the umbrella policies paid defense costs in addition to limits under a defense endorsement. (*See* Mar. 28, 2019 Allstate Pre-Hearing Brief at 7)). The panel rejected Amerisure's argument that, because the limits of the pre-1982 primary policies were exhausted, the policyholders' claims under those policies were "not covered" by them. (Interim Final Award at 2.) The panel explained that "not covered" did not mean uncollectible due to exhaustion of the primary policy; it meant outside the range of risks that the primary policies covered. (*Id.*) Thus, according to the panel, to the extent Amerisure had billed Allstate for "expense [*i.e.* defense costs] in addition" to policy limits under the pre-1982 policies, the billings were improper, just as "Amerisure appeared to [have] recognize[d] . . . by correctly incorporating the appropriate expense treatment within" a cost-sharing agreement ("CSA") it had worked out with F.B. Wright's other insurers, under which defense costs were included *within* policy limits. (*Id.*)

> Based on this reasoning, the panel rendered the following ruling:
>
> Accordingly, the Panel hereby **Orders** as follows:
> 1. Amerisure's claims for recovery of expenses billed under the F. B. Wright facultative certificates 62-048-098, 62-040-759 and 62-041-774 are denied.
> 2. Amerisure's claims for recovery of expenses billed under the Armstrong pre-'82 facultative certificates 62-041-995 and 62-042-812 are denied.
> 3. Amerisure's claims for recovery of expenses billed under the 1982 Armstrong facultative certificate 62 045 560 are granted. The parties should proceed in following the below expense payment protocol.
> 4. Ex parte communications can be resumed.
> 5. All other claims for relief by either party are denied.
>
> Expense Payment Protocol:
> Amerisure provided Allstate with the details of its expense billings by letter from Clyde & Co. dated March 26, 2019 (Ex 313). Allstate responded with numerous questions regarding the propriety of specific Armstrong LAE billings on March 29,

> 2019 (Ex 314). Amerisure has fifteen (15) business days from the date of this Award to respond to Allstate's letter of March 29, 2019.
>
> The parties shall thereafter "meet and confer" and make a good faith attempt to resolve all issues between them.
>
> If, however, the parties are unable to agree, in whole or in part, the Panel will review the parties' submissions on this issue as above, hear argument as it determines necessary and thereupon issue a Final Award regarding whether Allstate has any obligations to pay billed LAE, and if so, the amount thereof.

(*Id.* at 3-4.)

On May 24, 2019, in accord with the Expense Payment Protocol set forth by the panel, Amerisure responded to Allstate's request in its March 29, 2019 letter to provide more information about certain of its billings. It purported to answer Allstate's thirteen numbered questions and concluded by providing its account, "[i]n light of the Panel's Interim Award," of the "balances [that were] currently due." (Amerisure May 24, 2019 Letter to Allstate at 5, Allstate Mot. to Confirm Ex. 9, Case No. 19 C 4341, ECF No. 1-9.) The balances were broken down into separate "loss" and "expense" columns, but Amerisure explained that the amounts "reflect[ed] the Panel's ruling that as respects the three umbrella policies issued to F.B. Wright and the earliest two umbrella policies issued to Armstrong, defense shall be paid within the limits of those policies." (*Id.*)

Allstate objected to this response, and the parties were not able to "resolve" the remaining "issues between them" under the Expense Payment Protocol, in part because they disagreed as to how to interpret the Interim Final Award. Amerisure understood the Interim Final Award to have denied its claims for payment of defense costs only to the extent they exceeded the limits of the reinsured umbrella policies; but Allstate understood the panel's ruling to have denied Amerisure's claims for payment of any defense costs at all.

In June 2019, Allstate filed Case Number 19 C 4341, in which it moved this Court to confirm the Interim Final Award and enter judgment denying Amerisure any right to payment of defense costs under the pre-1982 facultative certificates. Meanwhile, the parties filed post-hearing briefs and

proposed awards before the arbitration panel. Allstate argued that the panel should render a final arbitration award only as to the 1982 contract, arguing that the panel had already ruled as to the other contracts. Amerisure sought an award of defense costs under all six facultative certificates.

On October 26, 2019, the panel adopted Amerisure's proposal, issuing a Final Award in which it awarded defense costs to Amerisure under all six of the facultative certificates. The award included only defense costs "billed as ultimate net loss" under the pre-1982 contracts, *i.e.*, defense costs within limits, but it included "defense costs billed as supplementary" to the policy limits under the 1982 contract. (Knoerzer Decl. Ex. 1, Final Award ¶ 3, ECF No. 27-2.) On October 28, 2019, Amerisure filed Case Number 19 C 7080, in which it moved for confirmation of the Final Award. The parties have submitted briefs, and their competing motions are now before the Court.

## ANALYSIS

The Federal Arbitration Act ("FAA") "governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts." *Jain v. de Méré*, 51 F.3d 686, 688 (7th Cir. 1995). Confirmation of arbitration awards is "usually routine or summary." *Hasbro, Inc. v. Catalyst USA, Inc.*, 367 F.3d 689, 691-92 (7th Cir. 2004); *see also D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) ("Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court 'must grant' the award 'unless the award is vacated, modified, or corrected.'") (quoting 9 U.S.C. § 9) (internal citation and some quotation marks omitted).

"If there is an agreement to arbitrate, and the issues presented to the arbitrator fell within that agreement, courts may overturn the arbitrator's award only on very narrow grounds." *Flexible Mfg. Sys. Pty. Ltd. v. Super Prods. Corp.*, 86 F.3d 96, 99 (7th Cir. 1996). "Judicial review of arbitration awards is tightly limited; perhaps it ought not be called 'review' at all." *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir. 1994); *see also Wise v. Wachovia Sec.,*

*LLC*, 450 F.3d 265, 269 (7th Cir. 2006) ("It is tempting to think that courts are engaged in judicial review of arbitration awards under the Federal Arbitration Act, but they are not.") "When parties agree to arbitrate their disputes they opt out of the court system, and when one of them challenges the resulting arbitration award he perforce does so not on the ground that the arbitrators made a mistake but that they violated the agreement to arbitrate, as by corruption, evident partiality, exceeding their powers, etc.—conduct to which the parties did not consent when they included an arbitration clause in their contract." *Wise*, 450 F.3d at 269; *see* 9 U.S.C. § 10(a) (providing that an arbitral award may be set aside only in limited circumstances, including "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made"). "Factual or legal error, no matter how gross, is insufficient to support overturning an arbitration award." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 563 (7th Cir. 2008).

Amerisure seeks confirmation of the Final Award and asks this Court to deny Allstate's motion to confirm portions of the Interim Final Award, arguing that the Interim Final Award was not actually "final" because it left a portion of the parties' dispute unresolved. *See Olson v. Wexford Clearing Servs. Corp.*, 397 F.3d 488, 491 (7th Cir. 2005) ("In determining the finality of an arbitration award, we consider whether 'the award itself, in the sense of judgment, order, bottom line, is incomplete in the sense of having left unresolved a portion of the parties' dispute.'") (quoting *IDS Life Ins. Co. v. Royal All. Assocs., Inc.*, 266 F.3d 645, 650 (7th Cir. 2001)); *McKinney Restoration, Co. v. Illinois Dist. Council No. 1 of Int'l Union of Bricklayers & Allied Craftworkers*, 392 F.3d 867, 872 (7th Cir. 2004) ("Where the evidence establishes that the arbitrator does not believe the assignment is completed, the award is not final."); *Anderson v. Norfolk & W. Ry. Co.*,

773 F.2d 880, 883 (7th Cir. 1985) ("To be considered 'final,' an arbitration award must be intended by the arbitrator to be his complete determination of every issue submitted to him.").

Allstate, by contrast, asks this Court to confirm the Interim Final Award to the extent it denied Amerisure's claims under the pre-1982 contracts and to deny Amerisure's motion to confirm the Final Award to the extent it awarded defense costs under those contracts. Allstate argues that the panel resolved all issues as to the pre-1982 contracts in the Interim Final Award; its ruling was final as to those contracts; and to the extent it purported to award defense costs under the pre-1982 contracts in the Final Award, its ruling was an improper reconsideration of the Interim Final Award, in violation of the *functus officio* doctrine. *See Anderson*, 773 F.2d at 883 ("[A]fter a final decision by an arbitrator, the arbitrator becomes *functus officio* and lacks the power to reconsider or amend the decision."); *see also Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 8*, 802 F.2d 247, 250 (7th Cir. 1986) (noting that the interests favoring arbitration are not served if the parties "can badger the arbitrator to reconsider his award for some indefinite time after he has made it"); *IDS*, 266 F.3d at 650 ("[S]ome cases deem an arbitral award final if it finally resolves a separate claim, or the liability of a particular party, even if other claims or other parties remain before the arbitrators." (citing *Publicis Commc'n v. True N. Commc'ns, Inc.*, 206 F.3d 725, 729 (7th Cir. 2000)) ("A ruling on a discrete, time-sensitive issue may be final and ripe for confirmation even though other claims remain to be addressed by arbitrators.")).

The present dispute boils down to one over the meaning of the Interim Final Award and the panel's intent in rendering it. The Interim Final Award is not a model of clarity, but the Court agrees with Amerisure that in the Interim Final Award the panel denied Amerisure's claims under the pre-1982 contracts only to the extent that Amerisure sought defense costs in addition to limits.

Although the Interim Final Award concluded by tersely ordering that "Amerisure's claims for recovery of expenses billed under [the pre-1982 contracts] are denied" (Allstate Compl. Ex. 8, Interim Final Award at 3), it is not reasonable to interpret this language to mean that the panel denied Amerisure's claims as to *any* defense costs, regardless of whether they were within or in addition to limits. Considering the language of the order in its full context—*i.e.*, considering it in the context of the Interim Final Award as a whole and considering the Interim Final Award in the context of the arbitration proceedings as a whole—it referred only to Amerisure's claims as to defense costs in addition to limits.

As the Court has explained above, a review of Allstate's pre-hearing brief (ECF No. 27-9) shows that, prior to the Interim Final Award, the crux of the dispute was not the ultimate issue of whether Allstate owed for defense costs and in what amount, but why Amerisure seemed to be paying defense costs in addition to—rather than within—policy limits and whether that practice exceeded Amerisure's obligations under the reinsured umbrella policies. These issues were what Allstate asked the panel to resolve by issuing an "Interim Award"; specifically, Allstate asked the panel to order Amerisure to provide additional information about why it had paid what it had paid, to retain jurisdiction to resolve further disputes based on what Amerisure disclosed, and to rule that defense costs were payable only within policy limits. (Allstate Mar. 28, 2019 Pre-Hearing Brief at 59-60.)

The panel did not describe its reasoning in detail in the text of the Interim Final Award; with respect to the pre-1982 contracts, its full reasoning comprised four paragraphs of less than a page. (Interim Final Award at 2, Allstate Compl. Ex. 8, ECF No. 1-8.) But the reasoning, such as it was, tracked elements of Allstate's March 28, 2019 pre-hearing brief, in which Allstate argued in painstaking detail over nearly twenty pages that the pre-1982 umbrella policies did not obligate

9

Amerisure to pay defense costs in addition to limits, and therefore Allstate should not have to pay such costs either; Allstate did *not* argue that it should not have to pay defense costs *within* limits. (Mar. 28, 2019 Allstate Pre-Hearing Brief at 40-59, Knoerzer Decl. Ex. 8, ECF No. 27-9.) The panel explained that, just as Allstate had argued (*see id.* at 42-45), the umbrella policies did not pay defense costs in addition to limits when their coverage was triggered by the exhaustion of underlying primary policies; they paid defense costs within limits in such cases, and they paid defense costs in addition to limits *only* when their coverage was triggered by claims against the policyholder that were outside the coverage of the primary policies. Reinforcing this conclusion, the panel explained, was the cost-sharing agreement Amerisure had entered into with F.B. Wright's co-insurers, which had correctly treated defense costs as included within the policy limits—again, tracking an argument Allstate had made in its pre-hearing brief (*see id.* at 46-48; *see also id.* at 50-53 (addressing similar cost-sharing agreement with Armstrong co-insurers)).

In light of this reasoning, sparse as it is, it is clear that in the Interim Final Award the arbitration panel intended to address only whether Amerisure could properly seek payment from Allstate of defense costs in addition to its policy limits, and it was only Amerisure's claims to such payments that were denied. The issue of whether Amerisure had also paid—and could claim from Allstate—defense costs that fell within policy limits had not yet been put before the panel at that time. The panel simply ruled on the issue that had been briefed, the issue of whether the policies paid defense costs in addition to limits, and then directed the parties to attempt to resolve any further differences themselves, while providing that if they could not, they could make further submissions to the panel, which would "hear argument as . . . necessary and thereupon issue a Final Award regarding whether Allstate has any obligations to pay billed LAE, and if so, the amount thereof."

The Court notes parenthetically, lest this seem a strange way for the panel to proceed, that it does not strike the Court as particularly strange in the context of this case. "The idea behind arbitration is that it is good to allow parties to contracts to design the method of dispute resolution that is best for them." *Smart v. Int'l Bhd. of Elec. Workers, Local 702*, 315 F.3d 721, 726 (7th Cir. 2002). In the context of a case like this, in which the dispute began with one side's dissatisfaction with the other side's willingness to share information, it was logical for the panel to (1) make a narrow ruling based on what the parties knew at the time; (2) order the parties to meet and confer; and (3) wait to see if the parties could work out the rest on their own. This is particularly true given that, generally, the parties pay the full cost of arbitration themselves, so they may prefer for arbitrators to issue narrow rulings and leave fine details to the parties themselves. *Id.* ("Since [the parties] bear the full expense—arbitration is not subsidized by the taxpayer, as litigation is—they naturally want to economize on the cost of the procedure[,] and so they may decide to confine the arbitrator to deciding liability, on the theory that once that decision is made it will be easy enough to determine the proper relief themselves."). Similarly here, the panel appears to have hoped that, once it ruled that Allstate did not owe Amerisure for defense costs in addition to limits, the parties would be able to determine for themselves what Allstate did owe. Allstate had asked for no more from the panel, and the Court sees no evidence that the panel went outside the issues presented to it by ordering more than Allstate had asked for; indeed, to the contrary, as the Court has described above, the relief the panel afforded in the Interim Final Award and the panel's reasoning seem to have tracked the relief requested and arguments made in Allstate's pre-hearing brief.

Allstate argues that it was only in setting forth the Expense Payment Protocol that the panel stated that it would entertain further submissions toward a Final Award regarding Allstate's obligation to pay defense costs, and the panel ordered the parties to follow the Expense Payment

Protocol only in paragraph three of the Interim Final Award's orders, the paragraph pertaining to the 1982 Armstrong contract. The panel made no mention of following the Expense Payment Protocol in either of paragraphs one and two, the paragraphs pertaining to the pre-1982 contracts. This tends to show, Allstate argues, that the parties were only to proceed with the Expense Payment Protocol to the extent Amerisure sought defense costs under the 1982 Armstrong policy, and any claims to defense costs under the other policies had been conclusively denied. Again, the Interim Final Award is not a model of clarity, and this peculiar drafting does provide some slight support for Allstate's position; but considering the language of the award in its full context, it is not enough to carry the day for Allstate. As the Court has explained above, the panel might have thought that there was no dispute over whether Amerisure could recover defense costs within limits; that issue was certainly not a focus of the dispute leading up to the Interim Final Award. Therefore, the Court can put but little importance on the placement of the direction to follow the Expense Payment Protocol in the paragraph dealing with the only facultative certificate under which the panel knew there was any remaining issue of paying defense costs at that time.

Further, the language of the Expense Payment Protocol is broad: the panel directed the parties to meet and confer in an attempt to resolve all remaining issues, and if they could not, the panel would consider "whether Allstate has any obligations to pay billed LAE, and if so, the amount thereof." It could have said that it would only consider whether Allstate had any obligations to pay billed LAE to the extent it exceeded limits—but it did not. Nor does the Court see what sense it would make to draw that sort of distinction because, under the pre-1982 umbrella policies, both defense costs and indemnity were included within "Ultimate Net Loss." The import of the ruling the panel made in the Interim Final Award was that there was no distinction under the umbrella policies, at least with respect to claims that were also covered by the primary policies,

between defense costs and indemnity, and the Court fails to see why the panel would have manufactured one.

The Seventh Circuit has often recognized in various contexts that issuing courts are in the best position to interpret their own orders, *see In re Consol. Indus.*, 360 F.3d 712, 716 (7th Cir. 2004) ("We will not reverse a court's interpretation of its own order unless it is a clear abuse of discretion, because a court that issued an order is in the best position to interpret it.") (internal quotation marks omitted); *see also Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1074 (7th Cir. 2018) ("Illinois courts are best positioned to interpret their own orders."), *Southworth v. Bd. of Regents of Univ. of Wis. Sys.*, 376 F.3d 757, 766 (7th Cir. 2004) ("[A] district court . . . is in the best position to interpret its own orders.") (internal quotation marks omitted), and the Court sees no reason a different principle should apply in the context of this arbitration dispute. The panel of arbitrators was in the best position to determine what its Interim Final Award had meant, and the Final Award shows that it did not consider its earlier ruling to prevent it from awarding Amerisure defense costs within the limits of the umbrella policies. Allstate insists that the Final Award is not evidence of the meaning of the Interim Final Award but a reconsideration of it, but this argument lacks force because, as the Court has explained, considered in the full context of the arbitration proceedings as a whole, there is no inconsistency between the Interim Final Award and the Final Award. Nor is the fact that the panel wrote that the Final Award "supersedes" the Interim Final Award to the contrary; the Court agrees with Amerisure that the use of that term shows that the panel considered the Final Award to be its final decision in the same matter as the Interim Final Award, *i.e.*, the Final Award was "a combined, final result where all of the arbitrators' unanimous rulings reside." (Amerisure Reply Mem. at 5 n. 6, Case No. 19 C 4341, ECF No. 30; *see also* Amerisure Mem. in Supp. of Pet. at 9-10, 13-14, Case No. 19 C 4341, ECF No. 27.)

The Seventh Circuit has stated that, in determining whether an arbitration award is final, "the question for the district court . . . is . . . whether the award itself, in the sense of judgment, order, bottom line, is incomplete in the sense of having left unresolved a portion of the parties' dispute." *IDS*, 266 F.3d at 651. The Interim Final Award was incomplete in just that way, leaving unresolved the issue of "whether Allstate ha[d] any obligations to pay billed LAE, and if so, the amount thereof," in hopes that the parties could reach agreement on the issue themselves, while holding out the possibility of making a "Final Award" of a sum certain if necessary. The Interim Final Award may have been final as to whether Amerisure could validly claim that Allstate was liable to pay defenses costs in addition to limits under the relevant contracts; all parties treated it as such. But the panel did not decide in the Interim Final Award whether and in what amounts Allstate was liable to pay any defense costs within limits, and therefore, in the full context of the arbitration proceedings, the decision was not final. *See Publicis*, 206 F.3d at 729 ("[C]ourts go beyond a document's heading and delve into its substance and impact to determine whether the decision is final.").

The final award in this case was the October 26, 2019 Final Award, not the May 6, 2019 Interim Final Award. In the Final Award, the panel only decided issues that it had not yet decided, so its decision was not *functus officio*. Under the Federal Arbitration Act, the Court must grant Amerisure's motion for confirmation. Because and to the extent that Allstate seeks relief in its motion that flatly contradicts the relief the Court provides by granting Amerisure's motion for confirmation, and because the Interim Final Award never provided a "mutual, final, and definite award," 9 U.S.C. § 10, of the kind Allstate seeks to confirm, Allstate's motion is denied.

14

## **CONCLUSION**

Amerisure's motion to confirm (Case No. 19 C 7080, ECF No. 1) is granted, and Allstate's motion (Case No. 19 C 4341, ECF No. 1) is denied. Amerisure will submit a final judgment order in compliance with 9 U.S.C. § 13 to the Court's proposed order email inbox (Proposed_Order_Alonso@ilnd.uscourts.gov) within seven days of the entry of this Memorandum Opinion and Order.

**SO ORDERED.**                                            **ENTERED:   March 25, 2020**

                                                                                       **HON. JORGE ALONSO**
                                                                                       **United States District Judge**